IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:20-CV-27-FL

| | |
|---|---|
| JOSEPH E. BLACKBURN, JR., and wife, LINDA C. BLACKBURN, and all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> DARE COUNTY, the TOWNS OF DUCK, SOUTHERN SHORES, KITTY HAWK, KILL DEVIL HILLS, NAGS HEAD, and MANTEO, <br><br> Defendants. | ORDER |

This matter comes before the court on defendant Dare County's ("County") motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (DE 23). This matter also comes before the court on defendant Towns of Nags Head, Duck, Kill Devil Hills, Manteo, Kitty Hawk, and Southern Shore's (collectively, "Towns") motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] (DE 25). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants' motions are granted.

---

[1] Defendant Towns also join in defendant County's motion to dismiss for failure to state a claim, adopting defendant County's arguments as their own.

## STATEMENT OF THE CASE

Pursuant to 42 U.S.C. § 1983, plaintiffs commenced the instant action on May 15, 2020, asserting defendants unlawfully took their private property without just compensation by banning them from entering the county during a state of emergency, in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs assert their claims individually and on behalf of similarly situated persons. On June 24, 2020, defendant County filed the instant motion to dismiss, asserting no compensable taking occurred. Defendant Towns filed their motion to dismiss approximately one week later, asserting plaintiffs lack standing to sue them for a taking under the Fifth and Fourteenth Amendments.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiffs are residents of Richmond, Virginia. (Compl. ¶ 3). Defendants are various bodies politic, created and existing under the laws of the State of North Carolina. (Id. ¶ 5). On July 22, 2013, plaintiffs acquired in fee simple a tract or parcel of land in the City of Frisco, Atlantic Township, Dare County, North Carolina, with a vacation home situated thereon, by deed recorded in Book 1936, Page 71 in the Office of the Register of Deeds of Dare County.[2] (Id. ¶¶ 4, 16). On March 16, 2020, defendant County declared a state of emergency due to the unprecedented public health crisis posed by COVID-19, which plaintiffs allege it has a right to do. (Id. ¶ 9; Emergency Decl. (DE 1-1) at 1–2). The next day, defendant County issued a declaration prohibiting mass gatherings and prohibiting nonresident visitors from entering the county. (Compl. ¶ 10; Nonresident Visitor Travel Restriction (DE 1-2) at 1–2).

---

[2] The court takes judicial notice of plaintiffs' recorded deed, which shows they hold title to their property in fee simple. See Fed. R. Evid. 201; Pratt v. Kelly, 585 F.2d 692, 696 & n.5 (4th Cir. 1978).

2

Effective March 20, 2020, defendant County imposed an additional restriction prohibiting nonresident property owners, such as plaintiffs, from entering the county. (Compl. ¶ 11; Nonresident Property Owner Travel Restriction (DE 1-3) at 1–2). Workers with an entry permit, county residents, and citizens of immediately adjoining counties were not prohibited from entering the county.[3] (Id. ¶¶ 12–13). The travel restriction prohibiting entry of nonresident property owners was partially lifted on Monday, May 4, 2020, again partially lifted on May 6, 2020, and then completely lifted on May 8, 2020. (Id. ¶ 14).

## COURT'S DISCUSSION

A.  Defendant Towns' Motion to Dismiss (DE 25)

　　1.　　Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where a defendant raises a "facial challenge[ ] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The

---

[3]　　The court takes judicial notice that Currituck, Tyrrell, and Hyde counties immediately adjoin Dare county. See United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979); Gov't of Canal Zone v. Burjan, 596 F.2d 690, 693–94 (5th Cir. 1979).

3

nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

2. Analysis

The United States Constitution extends the subject matter jurisdiction of the federal judiciary to "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "To establish Article III standing, the plaintiff seeking compensatory relief must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645, 1650 (2017) (quoting Spokeo, 136 S. Ct. at 1547)); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). "Absent such a showing, exercise of [] power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 38 (1976).

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (internal quotations and citations omitted). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Lewis v. Casey, 518 U.S. 343, 357 (1996) (internal citations omitted).

The challenged regulation, which prohibited travel to the county by nonresident property owners, was promulgated by defendant County. (Compl. ¶ 11; Nonresident Property Owner Travel Restriction (DE 1-3) at 1–2); see N.C. Gen. Stat. § 166A-19.31(a) (allowing the chair of

4

the county board of commissioners to promulgate prohibitions and restrictions on behalf of the county). Although the court reasonably can infer from the allegations that defendant Towns joined in and consented to the nonresident property owner travel restriction, (see Emergency Decl. (DE 1-1) at 1 (evidencing defendant Towns' consent to the emergency declaration and restrictions therein); Nonresident Property Owner Travel Restriction (DE 1-3) at 1 (imposing additional restrictions pursuant to the emergency declaration)), plaintiffs allege that they are "non-resident property owners of a tract or parcel of land in the City of Frisco, Atlantic Township, Dare County, North Carolina." (Compl. ¶ 16). As plaintiffs' loss of use of their property pursuant to defendant County's regulation is not "fairly traceable" to defendant Towns' consent to apply the county's emergency declaration and accompanying restrictions to their respective jurisdictions, see N.C. Gen. Stat. § 166A-19.22(b), plaintiffs lack standing to sue defendant Towns. See Spokeo, 136 S. Ct. at 1547.

Plaintiffs argue they have standing to assert their class claims against defendant Towns because other, unspecified putative class members' claims against defendant Towns would form a "juridical link" with defendant County. (Pl. Resp. (DE 32) at 6). The "juridical link" doctrine, which applies to Rule 23 of the Federal Rules of Civil Procedure, "assume[s] the presence of standing." La Mar v. H & B Novelty & Loan Co., 489 F.2d 461, 464 (9th Cir. 1973). The doctrine does not cure plaintiffs' lack of standing under Article III of the Constitution. See, e.g., Wong v. Wells Fargo Bank N.A., 789 F.3d 889, 896 (8th Cir. 2015); Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62–66 (2d Cir. 2012); Thompson v. Bd. of Educ. of Romeo Cmty. Sch., 709 F.2d 1200, 1204–06 (6th Cir. 1983). Accordingly, defendant Towns' motion to dismiss is granted for lack of subject matter jurisdiction.

B.  Defendant County's Motion to Dismiss (DE 23)

1.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). The court "may properly take judicial notice of matters of public record." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). Additionally, the court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Id. (internal citations omitted).

2.  Analysis

"To state a claim under § 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The Fifth Amendment to the United States Constitution provides in pertinent part that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V, cl. 4. This constitutional guarantee is "incorporated against the States by the Fourteenth

6

Amendment." Nollan v. California Coastal Comm'n, 483 U.S. 825, 827 (1987); see U.S. Const. amend. XIV (guaranteeing no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"). "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005). In addition, the United States Supreme Court has "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." Id.

a. Physical Taking

"When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner . . . , regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 322 (2002) (internal citation omitted). In Horne v. Dep't of Agric., the Court found the government's imposition of a reserve requirement for a farmer's raisin crop was a direct appropriation that involved "actual taking of possession and control" of private property, thereby requiring compensation. 576 U.S. 350, 361–62 (2015). Similarly, in Kaiser Aetna v. United States, the Court found that "the imposition of the navigational servitude" in a pond "result[ed] in an actual physical invasion of [a] privately owned marina." 444 U.S. 164, 180 (1979). Examples of physical takings abound from World War II,

7

Case 2:20-cv-00027-FL   Document 35   Filed 09/15/20   Page 7 of 16

when the government took possession of private resources in support of the war effort. See, e.g., United States v. Pewee Coal Co., 341 U.S. 114, 115–17 (1951); Kimball Laundry Co. v. United States, 338 U.S. 1, 3, 14 (1949); United States v. Causby, 328 U.S. 256, 261–67 (1946); United States v. Gen. Motors Corp., 323 U.S. 373, 375 (1945).

Plaintiffs allege that defendant County prohibited them and other nonresident property owners from entering the county from March 20, 2020, to May 8, 2020. (Compl. ¶¶ 10–11, 14). Taking the facts as true and drawing all reasonable inferences in plaintiffs' favor, such a prohibition is not a physical taking. Unlike the precedents discussed by the court above, the challenged restriction did not transfer possession or control of plaintiffs' private property to defendant County for public use. Rather, the subjects of the challenged regulation are plaintiffs; the prohibition being entry into Dare County. (See Nonresident Property Owner Travel Restriction (DE 1-3) at 1–2). The regulation does not compel transfer of any easement, servitude, or possession or control of plaintiffs' property to the government. See N. Transp. Co. v. City of Chicago, 99 U.S. 635, 639, 642 (1878) abrogated on other grounds by Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 414–15 (1922) (finding no physical taking where "[n]o entry was made upon the plaintiffs' lot. All that was done was to render for a time its use more inconvenient."). Thus, any incidental adverse effects to exercise of plaintiffs' private property rights are not legally cognizable as a physical taking.

Plaintiffs argue that, because they allege a "temporary complete taking," defendant County's regulation is a physical taking. (Pl. Resp. (DE 31) at 8–12). Plaintiffs rely upon the foregoing physical takings cases cited by the court to no avail. The law simply does not support plaintiffs' novel interpretation of possession or control by the government.

Plaintiffs also cite several other Supreme Court precedents equally unavailing to their case. Plaintiffs argue that "'temporary' takings which . . . deny a landowner all use of his property, are not different in kind from permanent takings, for which the Constitution clearly requires compensation." First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty., Cal., 482 U.S. 304, 318 (1987). Plaintiffs' reliance on First English is unpersuasive because it begs the "logically prior question whether the temporary regulation at issue had in fact constituted a taking." Tahoe-Sierra, 535 U.S. at 328 (quoting First English, 482 U.S. at 321 ("We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective.")); see also Knick v. Twp. of Scott, Pennsylvania, 139 S. Ct. 2162, 2171–72, 2179 (2019) (discussing First English and overruling the requirement that a state court deny plaintiff's claim for just compensation under state law prior to asserting a claim under the Takings Clause in federal court). Finally, plaintiffs cite Arkansas Game & Fish Comm'n for the proposition that "if a government action would qualify as a taking when permanently continued, temporary actions of the same character would also qualify as a taking." (Pl. Resp. (DE 31) at 11). Plaintiffs' reliance is misplaced. The Court in Arkansas Game & Fish Comm'n held "simply and only, that government-induced flooding temporary in duration gains no automatic exemption from Takings Clause inspection." 568 U.S. at 38 (emphasis added). Plaintiffs fail to allege a physical taking in the instant case.

  b. Regulatory Taking

"[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Mahon, 260 U.S. at 415. The United States Supreme Court recognizes regulatory takings in three situations: 1) a permanent physical occupation authorized by

9

Case 2:20-cv-00027-FL   Document 35   Filed 09/15/20   Page 9 of 16

government, 2) a regulation permanently required a property owner to sacrifice all economically beneficial uses of his or her land, 3) the facts and circumstances of the particular case show a taking has occurred. Arkansas Game & Fish Comm'n, 568 U.S. at 31–32; Lingle, 544 U.S. at 538–39.

For the same reasons that plaintiffs fail to allege a physical taking by defendant County, they also fail to allege a permanent physical occupation of their property sanctioned by defendant County. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435–36 & n.12 (1982). Likewise, the 45-day restriction on plaintiffs' access to Dare County is not a total regulatory taking denying plaintiffs all economically beneficial use in their property. See Tahoe-Sierra, 535 U.S. at 331–32 ("[A] fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted."); Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1019–20 (1992) (emphasis in original) (finding a categorical taking where petitioner's two beachfront lots were rendered valueless by respondent's enforcement of the coastal-zone construction ban); (see also Pl. Resp. (DE 31) at 14 (conceding Lucas does not apply in the instant case)). Where the instant case does not involve a per se regulatory taking, the court must determine whether the facts alleged plausibly state a claim for a regulatory taking.

"In engaging in these essentially ad hoc, factual inquiries" into whether regulation of private property interests should be considered a taking, "the Court's decisions have identified several factors that have particular significance." Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978). These factors include "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Murr v. Wisconsin, 137 S. Ct.

1933, 1943 (2017) (citations omitted). "In deciding whether a particular governmental action has effected a taking, this Court focuses . . . both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole." Penn Cent., 438 U.S. at 130–31; see Andrus v. Allard, 444 U.S. 51, 65 (1979) ("[T]he denial of one traditional property right does not always amount to a taking. At least where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety.").

As to the first Penn Central factor, plaintiffs allege that they "lost the fair market rental value and the value of use of said property by governmental regulations for 45 days." (Compl. ¶ 19). The complaint alleges no facts that sustain a reasonable inference as to the magnitude of the loss in this case, such as the frequency with which plaintiffs' previously have rented or used their property or the value of such loss to plaintiffs. See Pulte Home Corp. v. Montgomery Cty., Maryland, 909 F.3d 685, 696 (4th Cir. 2018) (evaluating the extent of plaintiff's loss based on the amount of land it could still develop). Moreover, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California, 508 U.S. 602, 645 (1993); see Hadacheck v. Sebastian, 239 U.S. 394, 405, 409–10 (1915). However, plaintiffs do allege some unspecified amount of economic loss, which under the first Penn Central factor would provide some support of plaintiffs' takings claim.

Turning to the second Penn Central factor, "courts have traditionally looked to the existing use of property as a basis for determining the extent of interference with the owner's 'primary expectation concerning the use of the parcel.'" Esposito v. S.C. Coastal Council, 939 F.2d 165, 170 (4th Cir. 1991) (quoting Penn Cent., 438 U.S. at 136). In Esposito, the court explained that

11

plaintiffs had not suffered a taking where "[t]hey continued to retain the fundamental incidents of ownership, including the right to possess the property, exclude others from it, alienate the property and continue to use it for residential and recreational purposes." Id. at 170; cf. Quinn v. Bd. of Cty. Commissioners for Queen Anne's Cty., Maryland, 862 F.3d 433, 442 (4th Cir. 2017) (finding no reasonable investment backed expectation of development based on speculative proposition that plaintiff was entitled to sewer services). Defendant County's regulation did temporarily interfere with plaintiffs' right to personally travel to their vacation property, diminishing plaintiffs' right to use the property.[4] Therefore, the second Penn Central factor supports plaintiffs' takings claim.

On the other hand, the third part of the Penn Central test decisively weighs against plaintiffs. "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Id. at 124; see Mahon, 260 U.S. at 415 (explaining that "an average reciprocity of advantage" indicates a regulation is not a taking). In making an assessment of whether a regulation is "functionally comparable to government appropriation or invasion of private property[,]" the court considers "the magnitude or character of the burden a particular regulation imposes upon private property rights" and "how any regulatory burden is distributed among property owners." Lingle, 544 U.S. at 542 (emphasis in original). "[R]easonable land-use regulations do not work a taking."[5] Murr, 137 S. Ct. at 1947.

---

[4] Nowhere did the travel restriction in the instant case prohibit plaintiffs from using someone as an agent to exercise many of their rights of ownership during the 45-day period in which the regulation was in effect. Indeed, the regulation on its face broadly leaves plaintiffs' authority to manage their property through local persons (e.g. cleaning services, construction workers, and real estate agents) intact.

[5] In this case, the government is not directly regulating land use. Rather, it is regulating the travel of nonresident property owners, which incidentally burdens their use of their property.

12

Courts have long recognized that regulations that protect public health or prevent the spread of disease are not of such a character as to work a taking. In Miller v. Schoene, the Supreme Court considered whether diminution of value caused by state mandated destruction of property owners' red cedar trees to prevent the spread of cedar rust, a fungal disease, to neighboring apple orchards must be compensated as a taking. 276 U.S. 272, 277–79 (1928); see Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 490 (1987) (construing the due process clause challenge under the Fourteenth Amendment in Miller as a Takings Clause claim). The Court declined to order plaintiffs be compensated, concluding that "where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property." Miller, 276 U.S. at 279–80. In Rose Acre Farms, Inc. v. United States, the United States Court of Appeals for the Federal Circuit considered whether regulations restricting the interstate sale and transportation of eggs and poultry from flocks contaminated by salmonella was a compensable taking. 559 F.3d 1260, 1263 (Fed. Cir. 2009). There, the court concluded that "the character of the government's act, protecting the public health by identifying diseased eggs and forcing their owner to remove them from the table market, weighs strongly against finding a taking here." Id. at 1281.

The instant case is more compelling than Miller and Rose Acre as to the character of the disputed government action. As plaintiffs allege, the COVID-19 pandemic is an "unprecedented" public health crisis. (Compl. ¶ 9). Both the United States and the State of North Carolina declared states of emergency several days prior to defendant County enacting the disputed travel restriction. Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 15337 (Mar. 13, 2020); Exec. Or. 116, 34 N.C. Reg. 1744, 1744–45 (Apr. 1, 2020); (Compl. ¶¶ 9–11). On March 27, 2020, citing the "occurrence of

13

widespread community transmission of the virus," the governor of North Carolina issued a broad range of public health directives, including an order that individuals stay at home and a restriction on mass gatherings. Exec. Or. 121, 34 N.C. Reg. 1903, 1903–06, 1911 (May 1, 2020). The Executive Order explicitly recognized that counties and cities may need to adopt local prohibitions and restrictions further restricting the activity of people and businesses. Id. at 1911–12.

Defendant County's state of emergency and ensuing restrictions were of the ilk of government health regulations seeking to "slow the spread of COVID-19" by directing people to stay at home and not travel to the county. (See Nonresident Visitor Travel Restriction (DE 1-2) at 1–2; Nonresident Property Owner Travel Restriction (DE 1-3) at 1–2). As plaintiffs' class allegations indicate, the burden of this regulation was distributed broadly among those property owners who reside in places other than the county. (See Compl. ¶ 20 (alleging that nonresident property owners are so numerous as to form a class); see Nonresident Property Owner Travel Restriction (DE 1-3) at 1–2). The burden of the county's stay at home order also was borne by nonresident visitors. (Nonresident Visitor Travel Restriction (DE 1-2) at 1–2). Further, the stated objective of the regulation, reducing transmission of a potentially life-threatening disease in the midst of a pandemic, is a reciprocal public health benefit shared by residents and nonresidents alike. Though the travel restriction limited plaintiffs' access to their property, the restriction was temporary. In sum, the regulation is a public health program that shifted the economic burdens of preventing transmission of COVID-19 by staying at home to persons residing outside the county.[6]

---

[6] In their brief in opposition to defendant County's motion, plaintiffs argue that defendant County's regulation violates the Privileges and Immunities Clause of the Constitution. See U.S. Const. art. IV, § 2; Saenz v. Roe, 526 U.S. 489, 500–01 (1999); Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 284 (1985); Toomer v. Witsell, 334 U.S. 385, 395–98 (1948). Such a claim, which involves an entirely different constitutional protection, is not alleged in plaintiffs' complaint and therefore not before this court.

14

Plaintiffs argue the instant case is a "temporary complete taking" where nonresident property owners "were deprived of all use during the Declaration." (Pl. Resp. (DE 31) at 14). Plaintiffs also argue that the Supreme Court's reasoning in Tahoe-Sierra is not applicable to the instant case. However, the Court explained that "[t]o sever a 32–month segment from the remainder of each fee simple estate and then ask whether that segment has been taken in its entirety would ignore Penn Central's admonition to focus on 'the parcel as a whole[.]'" Tahoe-Sierra, 535 U.S. at 303. Subsequent cases confirm that "time is indeed a factor in determining the existence vel non of a compensable taking." Arkansas Game & Fish Comm'n, 568 U.S. at 38 (collecting cases). By asking the court to focus on plaintiffs' rights in their property during the 45-day period in which the travel restriction was in effect, rather than the impact on defendant County's regulation on plaintiffs' rights in their property as a whole, plaintiffs invite the court to ignore one of the elementary holdings of Penn Central, which it will not do.

Plaintiffs also argue defendant County's regulation was not effective because it allowed exemptions for workers, county residents, and residents of three neighboring counties ingress to and egress from Dare County. (Pl. Resp. (DE 31) at 17–18; see Compl. ¶¶ 12–13). However, the court does not scrutinize whether defendant County's regulation "substantially advances" the goal of reducing COVID-19 transmission for purposes of its analysis under the Takings Clause. See Lingle, 544 U.S. at 544. Restriction of the nonresident property owners from entering the county to prevent the spread of disease is reasonably related to the goal of preventing transmission of disease. Cf. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25, 38 (1905).

Defendant County's concededly legitimate exercise of its emergency management powers under North Carolina law to protect public health in the "unprecedented" circumstances presented by the COVID-19 pandemic, (compl. ¶¶ 6, 9, 15), weighed against loss of use indirectly occasioned

15

by preventing plaintiffs from personally accessing their vacation home for 45 days, (id. ¶¶ 11, 14, 16), does not plausibly amount to a regulatory taking of plaintiffs' property.

## CONCLUSION

Based on the foregoing, defendant County's motion to dismiss for failure to state a claim (DE 23) is GRANTED. Defendant Towns' motion to dismiss for lack of subject matter jurisdiction (DE 25) is GRANTED. Plaintiffs' claims are DISMISSED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of September, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge